IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JAMES LOVELESS,

                Petitioner,

v.                                  CIVIL ACTION NO. 5:11-cv-00991

JOEL ZIEGLER,

                Respondent.

**MEMORANDUM OPINION AND ORDER**

By standing order entered September 2, 2010, and filed in the above-styled case on December 15, 2011, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendation for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort entered his PF&R on April 9, 2012, recommending that this Court: (1) deny Petitioner's Petition for Writ of Habeas Corpus [Docket 1]; (2) deny his Motion pursuant to Rule 36 of the Federal Rules of Criminal Procedure [Docket 4];[1] (3) deny his Motion for Summary Judgment [Docket 9]; and (4) dismiss this case from the Court's active docket. (Docket 11 at 13-14.) For the reasons contained in this opinion and order, the Court **ADOPTS** the PF&R, **DENIES** all relief Petitioner seeks [Docket 1, 4, 9], and **DISMISSES** the case from the Court's docket.

---

[1] Petitioner does not object to the Magistrate Judge's recommendation to deny his Rule 36 motion, and, finding no error in the recommendation, the Court summarily adopts the PF&R on this issue.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On April 29, 2009, officers of the Charleston, West Virginia, Police Department responded to a reported domestic disturbance at an apartment on Lawndale Lane in Charleston's South Hills neighborhood. (Docket 47 in case no. 2:09-cr-00130 at 3-4.)[2] Officers observed through a window Petitioner James Loveless pointing a black semiautomatic handgun at another man in the apartment, and they heard Petitioner threatening to shoot the man. (*Id.*) The officers knocked, identified themselves, secured all four occupants of the apartment, and received consent from the tenant to search the apartment. (*Id.* at 4-5.) Two additional handguns were recovered from the apartment, both of which had been reported stolen approximately one year earlier. The tenant told officers at least one of the additional handguns was given to her by Petitioner. (*Id.* at 5.)

Petitioner was arrested and charged in state court with receiving and transferring stolen goods on April 29, 2009. (*Id.* at 3.) Upon his arrest, it was discovered that Petitioner had absconded from a state sentence of home confinement, and he was ultimately charged with the state crime of escape from home confinement. Petitioner was also charged with wanton endangerment, as well as grand larceny for failing to return his electronic monitoring equipment. (*Id.*) On May 19, 2009, a federal grand jury returned a one-count indictment against Petitioner, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The federal charge is based on Petitioner's handgun possession at the time of the domestic disturbance on April 29, 2009. (*Id.*)

---

[2] Unless otherwise indicated, as here, references to the docket are to the docket in Petitioner's habeas corpus case, case number 5:11-cv-00991.

2

Petitioner was held in state custody, with a federal detainer lodged against him once the federal indictment was returned. On June 2, 2009, Petitioner was "borrowed" pursuant to a writ of habeas corpus ad prosequendum for the purpose of prosecuting the federal charges against him. (Docket 8 in case no. 2:09-cr-00130.) Petitioner appeared before the Honorable Joseph R. Goodwin, Chief United States District Judge for the Southern District of West Virginia, and pled guilty to the indictment. (Docket 29 in case no. 2:09-cr-00130.) He was sentenced to a term of 46 months' imprisonment, to be followed by three years of supervised release, on October 13, 2009. (Docket 44 in case no. 2:09-cr-00130.)[3]

Following his federal sentencing, Petitioner was returned to state custody, and on December 3, 2009, he was sentenced in state court to a one-year term of imprisonment for escape from home confinement, pursuant to a guilty plea agreement with the state prosecutor. (Docket 8-1 at 17-19.) The state sentencing order states that Petitioner was sentenced to "a term of one (1) year, to run concurrent by [sic] the sentence by the United States District Court for the Southern District of West Virginia in Case Number 2:09-cr-00130." (*Id.* at 19.) The state court further ordered that Petitioner be committed by state authorities to "South Central Regional Jail, to be kept imprisoned and maintained in the manner prescribed by law." (*Id.*) Petitioner

---

[3] Chief Judge Goodwin did not indicate whether he intended Petitioner's federal sentence to run concurrently or consecutively to the forthcoming state sentence. This omission may be because, at the time of the federal sentencing, Fourth Circuit case law indicated that such prospective sentencing decisions were not permissible. *See United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006). As set forth below, the Supreme Court recently overruled circuit precedent and held that a district court is free to order its sentence be served concurrently or consecutively to a forthcoming state sentence. *See Setser v. United States*, ___ U.S. ___, 132 S. Ct. 1463, 1468-70 (2012).

Petitioner also argues in his early filings that the BOP impermissibly employs a presumption in favor of a consecutive federal sentence, which 18 U.S.C. § 3584(a) does not support. Petitioner is correct that Fourth Circuit and Supreme Court precedent firmly establish that the presumptive concurrent/consecutive sentence provisions of § 3584(a) do not apply to the situation at hand. *See Setser*, 132 S. Ct. at 1467, 1470; *Smith*, 472 F.3d at 226. However, there is no indication from the record that the BOP employed any such presumption. Instead, the BOP followed statutory directive in calculating Petitioner's federal sentence from the time of his receipt into federal custody, with credit for time served in detention and not credited to any other sentence.

remained in state custody until October 3, 2010, the completion of his state sentence. The federal Judgment and Commitment Order, which had been filed as a detainer, required state authorities to surrender Petitioner to the custody of the Federal Bureau of Prisons ("BOP"), which occurred on October 13, 2010. Petitioner received prior custody credit for the time spent in custody between his arrest on April 29, 2009, and the beginning of his state incarceration on December 3, 2009. (Docket 8 at 3.) He also received credit for the nine-day gap in between the expiration of his state sentence on October 3, 2010, and the commencement of his federal sentence on October 13, 2010. (*Id.*)

While in federal custody, Petitioner filed a request with the BOP for a nunc pro tunc designation of the state prison where he served his sentence as a federal facility. If granted, the request would have afforded Petitioner credit against his federal sentence for the approximately ten months he served in state custody. The BOP ultimately denied Petitioner's request, citing his untimeliness in pursuing his administrative remedies, as well as undertaking an independent review of the factors under 18 U.S.C. § 3621(b). Specifically, the BOP section chief denied Petitioner's request based on: (1) the nature and circumstances of the instant offense; (2) the history and characteristics of Petitioner, including his criminal history and institutional behavior record; and (3) the lack of any statement from the district court stating that the federal sentence was intended to run concurrently to the subsequent state sentence. (Docket 8-1 at 34.) Petitioner was notified of the denial by Respondent on March 25, 2011. (Docket 5 at 15.) It appears that Petitioner pursued two administrative appeals of the BOP decision, but both were unsuccessful. (*Id.* at 17, 20.)

4

On December 15, 2011, following the denial of his administrative appeals, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dockets 1, 5.) In those filings, Petitioner states that "[the BOP] unlawfully denied me credit for time served in state or federal prison." (Docket 5 at 6.) In his memorandum in support of the petition, Petitioner challenges the BOP's denial of his request for nunc pro tunc designation and asserts that he has been improperly denied federal credit for time spent in custody pursuant to 18 U.S.C. § 3585. In support of the former argument, Petitioner states that the state sentencing judge clearly intended his sentence to run concurrent to the federal sentence, and the BOP's denial of his nunc pro tunc request results in unlawful detention.

## II. DISCUSSION

This Court is required to construe pro se pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The purpose of the liberal construction given pro se pleadings is to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the

magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Petitioner filed objections to the Magistrate Judge's PF&R on April 18, 2012 [Docket 12].

### A. *Primary Jurisdiction & Service of Federal Sentence*

In his objections to the PF&R, Petitioner raises several issues. First, Petitioner states that the PF&R errs in concluding that the BOP is not bound by the concurrency order of the state court. He asserts that "[t]he BOP has an obligation to execute sentences in a manner that is consistent with the intent [and] belief of the [state] sentencing judge." (Docket 12 at 2.) This statement is patently false.

As the PF&R explains, Petitioner was first arrested by state authorities, vesting the State of West Virginia with primary jurisdiction over him. Petitioner's temporary transfer to federal authorities to participate in proceedings before the district court did not operate to relinquish that primary jurisdiction. *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998) ("A federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation."). Because the State of West Virginia retained primary jurisdiction over Petitioner from the time of his arrest on April 29, 2009, until his discharge from state prison on October 3, 2010, his federal sentence did not commence until the BOP received him in custody on October 13, 2010.[4] This result is

---

[4] Petitioner is entitled by statute to federal credit for all time in detention not credited to another sentence. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence."). Respondent's memorandum in response to the Court's show cause order indicates that

prescribed by statute. *See* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). Consequently, Petitioner's full federal sentence of 46 months' imprisonment did not begin to run until October 13, 2010, and his assertion that the state court's concurrency order "giv[es] the controlling Authority of custody to the Federal Court's sentence" is incorrect.

Further, in his objections, Petitioner suggests that the BOP is obligated to grant his nunc pro tunc designation request because to conclude otherwise would conflict with the state court's concurrency order. This argument is incorrect for two reasons. First, Congress has granted the BOP wide latitude in selecting the place of a federal prisoner's confinement, directing BOP officials to consider five factors in making its decision. *See* 18 U.S.C. § 3621(b)(1)-(5).[5] By its very nature, Petitioner's argument that BOP has no discretion to deny his nunc pro tunc request when a state court directs concurrent service of its sentence flies in the face of this statutory

---

Petitioner has received all appropriate credit, and the Court concludes that he has so received all appropriate credit for time spent in detention.

[5] Section 3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence—
>    (A) concerning the purposes for which the sentence to imprisonment was deemed to be warranted; or
>    (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission . . . .

directive to the BOP. When faced with the decision of whether to comply with a state judge or the United States Congress, the BOP must always choose the latter. Second, it is well established that "neither federal courts nor the [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently." *Barden v. Keohane*, 921 F.2d 476, 478 n.4 (3d Cir. 1990); *see also Trowell v. Beeler*, 135 F. App'x 590, 594 (4th Cir. 2005) (unpublished). This principle is rooted in the Constitution's Supremacy Clause and our system of dual sovereignty. Practically speaking, had the State of West Virginia wished to give effect to the concurrency order issued by the state judge, it could have relinquished primary jurisdiction by immediately releasing Petitioner to federal authorities. *See Trowell*, 135 F. App'x at 594. The State of West Virginia had an obligation to act vigilantly to enforce the concurrency order in this case. It did not do so. In sum, Petitioner's suggestion that the BOP is required to grant his nunc pro tunc designation is without merit.

In a related argument, Petitioner states "[by] the BOP making it's [sic] own decision raises serious separation of powers and Federalism concerns." (Docket 12 at 2.) The Fourth Circuit addressed and rejected these very arguments in the *Trowell* case, referenced above. 135 F. App'x at 594. Quite the opposite of Petitioner's suggestion, were the BOP to blindly follow the state court's concurrency order, congressional directive would be subverted in a manner that deeply offends the concept of federalism. *Cf. Reynolds v. Thomas*, 603 F.3d 1144, 1149 (9th Cir. 2010) ("[C]oncurrent sentences imposed by state judges are nothing more than recommendations to federal officials."). As for the separation of powers argument, the Court presumes that Petitioner is challenging the BOP's exercise of its discretion under §3621(b) as an impermissible encroachment upon the sentencing authority typically vested in the judicial branch. The

8

Supreme Court recently had occasion to consider the interplay between the BOP and the federal judiciary regarding consecutive and concurrent sentencing in *Setser v. United States*, ___ U.S. ___, 132 S. Ct. 1463 (2012).  There, the Court ultimately held that a federal court has authority to order its sentence to run consecutively to a yet to be imposed state sentence.  *Id.* at 1468-70.  In reaching this conclusion, the Court recognized that the sentencing function is to be exercised by the judiciary alone, and the BOP, as an arm of the same branch of government that prosecutes criminals, is confined to executing that sentence.  *See id.* at 1470.  The *Setser* decision, however, made clear that the BOP's nunc pro tunc decision-making authority under § 3621(b) is not an exercise of sentencing authority, but a "determin[ation] [of] how long the District Court's sentence authorize[s] it to continue [the defendant's] confinement."  *Id.* at 1473.  Thus, the Court considered the respective roles of the BOP and the judiciary, and it cast no doubt on the propriety of the BOP making independent determinations of whether to retroactively designate a state facility for service of a prisoner's federal sentence pursuant to the five factors listed in § 3621(b).  *See also Hunter v. Tamez*, 622 F.3d 427, 431 (5th Cir. 2010) (likening the BOP's nunc pro tunc designation authority to post-sentencing leniency and finding "no separation of powers problem presented by the facts of this case . . . [because] a request for post-sentencing leniency . . . [is] the proper domain of the executive branch.").

In sum, Petitioner is incorrect to assert that the BOP's decision amounts to an unconstitutional decision, and he is mistaken in his belief that the BOP is beholden to the state court's concurrency order.  Both contentions have been squarely rejected by Congress and the federal courts.

*B. State Plea Agreement*

Petitioner next argues:

> The failure of the BOP to [grant his nunc pro tunc designation request] create[s] a violation in the Petitioner's guilty plea in State Court. Furthermore, this [denial] would deprive the Petitioner of his Due Process right to have honored the material promised upon which the Petitioner used to accept the plea. The BOP has construed a breach of the Petitioner's plea, and [he] is entitled to appropriate relief to remedy this breach.

(Docket 12 at 2.) An order from state court indicates that the plea agreement in Petitioner's state case was non-binding in nature, stating "any plea agreement that appears in the record of this case is not binding upon this Court with respect to punishment . . . ." (Docket 8-1 at 18.) The same order indicates that the state judge found that Petitioner understood the non-binding nature of the plea agreement's concurrency recommendation. (*Id.*) In addition, any promise by the state prosecutor that Petitioner would receive a concurrent sentence from the state judge ultimately proved true—Petitioner actually received a concurrent sentence from the state judge. Moreover, the state prosecutor is wholly without power to bind the BOP, especially considering the discretion vested in the BOP by Congress in § 3621(b).

It was the state system that failed to give effect to the state sentence, and the BOP is not now responsible for righting that wrong. Nor is the Court empowered to grant Petitioner's writ of habeas corpus without a finding that he is being held in violation of the U.S. Constitution or the laws of the United States. The only remaining question, then, is whether the state corrections department violated federal law or the Constitution by failing to immediately release Petitioner to federal custody. Myriad decisions from federal courts of appeals illustrate that the present circumstances, in which the state corrections department failed to give proper effect to the concurrency order, do not permit habeas relief. *See, e.g.*, *Hunter v. Tamez*, 622 F.3d 427, 430-32

10

(5th Cir. 2010) (considering and rejecting federalism and separation of powers arguments against the BOP's nunc pro tunc authority in a factually similar case); *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005) (upholding BOP denial of nunc pro tunc designation where state corrections department failed to immediately release petitioner); *Taylor v. Sawyer*, 284 F.3d 1143, 1150-52 (9th Cir. 2002) (upholding BOP denial in like circumstances and rejecting arguments that BOP discretion violates principles of federalism, separation of powers, and state sovereignty); *Barden*, 921 F.2d 476, 478 & n.4 (3d Cir. 1990) (citing Supremacy Clause of U.S. Constitution and stating "neither the federal courts nor the [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently"); *Trowell v. Beeler*, 135 F. App'x at 593-94 (finding, in identical circumstances, that "there is no constitutional defect . . . because at the time the [state] court entered its order directing concurrent service of the state sentence, [the defendant] had not yet begun his federal term of imprisonment. Had [the state] wished to give effect to its court's concurrency order, the state could have . . . deliver[ed] him into federal custody for the purpose of beginning his federal sentence."); *see also Jefferson v. Berkebile*, 688 F. Supp. 2d 474, 488 (S.D.W. Va. 2010) ("Furthermore, Petitioner has cited no law, nor has this Court found any, which supports the notion that due process concerns oblige the BOP to make designation decisions in such a manner that none of the sentencing judge's factual assumptions are frustrated."); *cf. Fegans v. United States*, 506 F.3d 1101, 1104-05 (8th Cir. 2007) (upholding BOP denial of nunc pro tunc designation in similar circumstances).

    *C.* Jefferson v. Berkebile

In considering the instant petition for writ of habeas corpus, the Court referred the litigants to its fairly recent opinion in *Jefferson v. Berkebile*, 688 F. Supp. 2d 474 (S.D.W. Va.

2010). A careful review of the Court's opinion in *Jefferson*, however, reveals that it does not support the relief Petitioner seeks. In *Jefferson*, the Court ordered a petitioner's immediate release based in large part on the federal sentencing judge's erroneous assumptions that: (1) the petitioner's impending state sentence would run concurrently with his federal sentence; (2) the petitioner would be transferred from a state jail to a federal prison shortly after the federal sentencing hearing; and (3) the petitioner's federal sentence would likely be the only punishment petitioner would receive. *Id.* at 485-86. Consequently, the Court concluded that the federal sentencing judge's false "assumption about petitioner's impending state sentence was a principal reason for the decision to impose an upward departure." *Id.* at 486. Unlike the facts in *Jefferson*, there is no evidence in the record here that the federal sentencing judge imposed a greater sentence based upon a false assumption that Petitioner would serve his federal and state sentences concurrently. Nor is there any indication in the record that the federal sentencing judge anticipated his sentence would account for the state charge of escape from home confinement, although the presentence report no doubt made him aware of the pending charge.[6] *See* 688 F. Supp. 2d at 486 ("Thus, Petitioner's federal sentence satisfies the two criteria for finding a due process violation: (1) it was based, at least in part, on a false assumption, and (2) the assumption demonstrably made the basis for the sentence."). In light of this significant contrast, *Jefferson* affords Petitioner no relief. The Court's decision in *Jefferson* was the result of several errors which, cumulatively, led to granting the petitioner's writ of habeas corpus.

---

[6] Chief Judge Goodwin made clear at Petitioner's sentencing before the district court that the sentence was based in large part on Petitioner's substantial criminal history and habitual disregard for the law, stating "the criminal history is extensive and it demonstrates that the defendant, even when under a sentence, doesn't have any respect for the law" and "his prior sentences have failed to deter him."

Nearly none of the circumstances from *Jefferson* that so troubled the Court are present in this case.

### D. Review of BOP Decision

Petitioner's final objection is that the BOP abused its discretion in denying his request for nunc pro tunc designation. In particular, Petitioner appears to argue that the BOP was required to grant his nunc pro tunc designation request because the undersigned judge ordered the request be granted in response to the BOP's inquiry pursuant to 18 U.S.C. § 3621(b)(4). This argument must fail for two reasons. First, the undersigned made no recommendation to the BOP that Petitioner's request be granted; instead, the letter indicated that the case was no longer referred to the sentencing judge and that the undersigned had no objection to the BOP exercising its authority to grant Petitioner's request. Second, even had the letter been what Petitioner claims, the BOP is required only to consider the Court's recommendation as one of five factors in deciding whether the grant or deny nunc pro tunc designation. It is under no statutory obligation to yield to the sentencing judge's recommendation, and indeed, to do so would be an abuse of discretion. *See Trowell*, 135 F. App'x at 596 (holding it was an abuse of discretion for the BOP to "simply defer to the expressed views of the sentencing court").

The BOP's decision pursuant to § 3621(b) is entitled to a presumption of regularity and will not be disturbed in the absence of clear evidence to the contrary or abuse of discretion. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Although not required to do so, the BOP completed a worksheet setting forth its reasons for denying Petitioner's request. (Docket 8-1 at 34.) A review of this worksheet and the record, especially the presentence report,

reveals no error or abuse of discretion on the part of the BOP in considering the factors enumerated in § 3621(b). Accordingly, the BOP's decision must stand.

### *III. CONCLUSION*

For the foregoing reasons, the Court **ADOPTS** the PF&R, **DENIES** all relief Petitioner seeks [Docket 1, 4, 9], and **DISMISSES** the case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 21, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE